[Cite as *Cleveland v. Johnson*, 2025-Ohio-1731.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                          :

    Plaintiff-Appellee,                :

                               No. 114266

    v.                                 :

TAMMY ANN JOHNSON,                          :

    Defendant-Appellant.               :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 15, 2025

---

Criminal Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2023-CRB-007418

---

### *Appearances:*

Mark Griffin, Cleveland Director of Law, and Michael A. Glazer, Assistant Director of Law, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Thomas T. Lampman, Assistant Public Defender, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant Tammy Johnson appeals the trial court's judgment sentencing her to community-control sanctions after she pleaded guilty to

20 misdemeanor housing-code violations involving a home that she owns in Cleveland, Ohio. She raises two assignments of error for our review:

1. It was improperly excessive to apply the conditions of community control to Johnson's non-subject properties.

2. The application of community control conditions to Johnson's non-subject properties was not announced in open court at the sentencing hearing.

{¶ 2} After review, we disagree with Johnson's arguments and overrule her assigned errors. It is clear from the sentencing entry that the trial court's community-control conditions applied only to the subject property and not a property that Johnson does not yet own. We therefore affirm the trial court's judgment.

## I. Procedural History and Factual Background

{¶ 3} In September 2023, Johnson was charged with 75 counts of first-degree misdemeanor housing-code violations involving her home located in Cleveland, Ohio ("cited property"). Johnson withdrew her former plea of not guilty in June 2024 and pleaded guilty to 20 counts of failure to comply with a lead-hazard-control order in violation of Cleveland Cod.Ord. ("C.C.O.") 240.04(e), misdemeanors of the first degree. The city requested that the court nolle the remaining 55 counts, which the trial court granted. At the plea hearing, the trial court asked Johnson if this was the only property she owned. Johnson responded, "In the city of Cleveland, yes."

{¶ 4} At the sentencing hearing, the trial court heard from a housing-court specialist. The housing-court specialist informed the court that she was at the

hearing to provide an update to the court regarding Johnson's housing-code violations on the cited property. After reviewing the violations at issue, the housing-court specialist stated that "defendant owns no other properties in the city of Cleveland."

{¶ 5} The trial court orally imposed the maximum penalty of $20,000 but stayed $19,000 of it, ordering Johnson to pay $1,000. The court also imposed an 18-month jail sentence but stayed the sentence provided that Johnson complied with the conditions of her community control. The court imposed two years of active community control with conditions and stated the conditions in court.

{¶ 6} In the sentencing entry, the trial court explained that at the sentencing hearing, the housing court specialist "read her report regarding all properties owned in the City of Cleveland by Defendant into the record." The court further stated that the specialist "informed the Court that the Defendant owns only the cited property located" in the City of Cleveland.

{¶ 7} In addition to other conditions, the court stated the following relevant conditions in the sentencing entry:

> 5. Defendant verbally ordered not to sell, gift, or transfer the properties she owns within the City of Cleveland while on community control without approval of the Court. [SEE ATTACHED PROPERTY LIST]
>
> 6. Defendant is ordered to obtain rental registration for all properties she owns within the City of Cleveland or apply for applicable rental registration exemptions. Defendant must submit copies of proof of all rental registrations or exemptions to Housing Court Specialist Rita White prior to the next hearing date. [SEE ATTACHED PROPERTY LIST]

7. Defendant is ordered to comply with the City of Cleveland's Lead Safe Ordinance by obtaining a lead-safe certificate for all rental properties she owns within the City of Cleveland or apply for applicable lead-safe exemptions. Defendant must submit copies of proof of all lead-safe certificates, receipts of future testing, or exemptions to Housing Court Specialist Rita White prior to the next hearing date. [SEE ATTACHED PROPERTY LIST]

8. Defendant is ordered to clean all of the properties owned within the City of Cleveland and keep them free from all junk, debris, and dumping. [SEE ATTACHED PROPERTY LIST]

9. Defendant is ordered to IMMEDIATELY remove any tires or junk and debris from the cited property located [in Cleveland, Ohio] 44120.

10. Defendant is ordered to cut all grass and remove any shrubbery or overgrowth of shrubbery from any of the properties owned within the City of Cleveland. [SEE ATTACHED PROPERTY LIST]

11. Defendant is ordered to maintain property taxes OR provide copied proof of a tax payment plan for all the properties she owns within the City of Cleveland to Housing Court Specialist Rita White prior to the next hearing date.

12. Defendant is ordered to allow an inspector from the City of Cleveland, Department of Building and Housing to do an interior and exterior inspection of the cited property, to include any garages or sheds, located at [the cited property].

. . .

15. Defendant is ordered to submit a Tier I (30 Day) Maintenance and Repair plan to Housing Court Specialist Rita White, every thirty (30) days, beginning on August 1, 2024. The maintenance and repair plan shall include dates when the property manager drives by owned properties to inspect so that no violation can occur, and when vacant properties are secured, when properties are scheduled for renovations, inspections, and/or sale, and attach permits when pulled. [SEE ATTACHED PROPERTY LIST]

{¶ 8} The attached property list was titled "Properties Owned/Controlled By Tammy [Johnson]" and listed only one property, i.e., the cited property located in the City of Cleveland.

{¶ 9} It is from the sentencing entry that Johnson now appeals.

## II. Law and Analysis

{¶ 10} We note at the outset that Johnson does not argue that the trial court's community-control sanctions in relation to the cited property are unreasonable, overbroad, or unrelated to the goals of community control. *See State v. Jones*, 49 Ohio St.3d 51, 53 (1990). We therefore do not have to review whether the conditions of community control were valid with respect to the cited property.

{¶ 11} In her first assignment of error, Johnson argues that the trial court's community-control conditions are "improperly excessive" because they apply to properties that Johnson does not yet own. Johnson claims that because the trial court stated that many of the conditions apply to all properties owned by Johnson in the City of Cleveland, she could immediately be in violation if she acquired another property.

{¶ 12} We agree with Johnson that if the current community-control sanctions applied to any new property that she acquired in the City of Cleveland, it would be a violation of her "'due process'" rights. *See Cleveland v. Sopjack*, 2024-Ohio-6018, ¶ 60 (8th Dist.), citing *Cleveland v. Southwest Invests., L.L.C.*, 2024-Ohio-1271, ¶ 45 (8th Dist.) (E.T. Gallagher, P.J., concurring in judgment only). But after reviewing the sentencing entry in this case, we disagree with Johnson that

the trial court's community-control sanctions apply to properties that she might own in future. Although the trial court stated multiple times in the sentencing entry that its conditions applied to "properties" owned by Johnson in the City of Cleveland, the trial court also explicitly stated, "See attached property list" for properties to which the conditions applied. Notably, the attached list included the only property that Johnson owns in the City of Cleveland, namely, the cited property at issue in this case.

{¶ 13} We therefore disagree with Johnson that the trial court's community-control conditions apply to properties that she could acquire in the future.

{¶ 14} Moreover, even if we agreed with Johnson that the trial court's community-control conditions could apply to properties that she purchased within the City of Cleveland in the future, we could not address the issue because it would not be ripe for review.

{¶ 15} "[T]o be justiciable, a controversy must be ripe for review." *Keller v. Columbus*, 2003-Ohio-5599, ¶ 26. "For a cause to be justiciable, there must exist a real controversy presenting issues that are ripe for judicial resolution and which will have a direct and immediate impact on the parties." *Cristino v. Ohio Bur. of Workers' Comp.*, 2014-Ohio-1383, ¶ 22 (10th Dist.). "'The basic principle of ripeness may be derived from the conclusion that "judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote."'" *State ex rel. Elyria Foundry Co. v. Indus. Comm. of Ohio*, 82 Ohio St.3d 88, 89 (1998), quoting

*Comment, Mootness and Ripeness: The Postman Always Rings Twice*, 65 Colum.L.Rev. 867, 876 (1965).

{¶ 16} "Ripeness 'is peculiarly a question of timing.'" *Id.*, quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974). Three factors guide the ripeness inquiry: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012). When an injury has not yet occurred but is imminent or inevitable, however, ripeness may be found. *See State v. Wilburn*, 2021-Ohio-578, ¶ 15 (8th Dist.).

{¶ 17} In this case, Johnson poses several hypotheticals that could happen if she purchased another property in the City of Cleveland. But there is no evidence in the record that Johnson is searching for a property to purchase within the City of Cleveland, is in the process of doing so, or plans to do so in the future. We therefore find that even if we agreed with Johnson that the trial court's sentence included properties that she may purchase in the future, this issue would not be ripe for review.

{¶ 18} Johnson's first assignment of error is overruled.

{¶ 19} In her second assignment of error, Johnson argues that the trial court erred by including community-control conditions in the sentencing entry that it did not announce in open court at the sentencing hearing. Specifically, Johnson

contends that the trial court's community-control conditions announced orally at the sentencing hearing applied only to the cited property but that the sentencing entry expands the conditions to all properties she may own in the future.

{¶ 20} Again, we disagree. As we explained in the previous analysis, the trial court's sentencing entry applies only to the single property that Johnson presently owns in the City of Cleveland. Therefore, the sentence that the trial court announced at the sentencing hearing is the same one that is in the sentencing entry.

{¶ 21} Johnson's second assignment of error is overruled.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court, Housing Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., CONCURRING:

{¶ 23} I concur fully with the judgment and analysis of the majority. I write separately to address concerns raised by this appeal. In writing separately, it is not

my intent to question the motives of the housing court or its staff. I presume they are trying to serve the best interests of landowners, residents, and the city. My observations from reviewing this and similar cases reveal concerns with some of the methods employed by the court.

{¶ 24} The Cleveland Housing Court came into existence on April 2, 1980, through an act of the General Assembly. *See generally* R.C. 1901.01 through 1901.331. The court was created not to be punitive, but to assist homeowners, residents, and the municipality in dealing proactively with a myriad of housing issues that, at the time, were impacting major cities in Ohio and continue to be at issue to this date. *See generally*, Frederic P. White, *The Cleveland Housing Court Act: New Answer to an Old Problem*, 30 Clev.St.L.Rev. 41 (1981).

{¶ 25} While code enforcement was a component of the court's duties, the approach initially centered on helping to improve the housing stock.

> The general duties of the Housing Specialist include visiting premises to examine the extent of needed repairs, interviewing owners and tenants to ascertain what can be done to effect such repairs and, from time to time, revisiting the property to examine the progress for work being done. Primary duties of the specialist, however, consist of steering homeowners to various loan and grant programs to secure funds for necessary repairs.

*Id*. at 46. The original spirit of the court's purpose was to support resolution of housing problems in a holistic manner over purely criminal enforcement. *See id*.

{¶ 26} It is undeniable that code enforcement has been a necessary component of the court's duties. Yet over the court's 45-year existence, a culture of

"overreach" has developed by the generally broad brush the Cleveland Housing Court uses in imposing community-control sanctions on housing code violations.[1]

{¶ 27} In this case, it is unclear why the housing court found it necessary to discuss its specialist's report regarding "all properties owned in the City of Cleveland by the Defendant" or why the sentencing entry needs an appendix to list other properties beyond what is listed in the charging instrument. *See Cleveland v. Southwest Invests. LLC*, 2024-Ohio-1271, ¶ 35 (8th Dist.) (E.T. Gallagher, J., concurring in judgment only) (lamenting the housing court's pattern of implementing "overly punitive" sanctions against certain defendants). It appears that the boilerplate entry used by the housing court contemplates using its specialist's report to impose additional sanctions on a defendant's other properties in Cleveland for uncharged violations.

{¶ 28} The styling of that sentencing entry is concerning. It has generally been concluded that the housing court may not include conditions on other properties as part of the community-control sanctions imposed on violations pertaining to a subject property identified in the charging instrument. *Cleveland v. City Redevelopment LLC*, 2024-Ohio-5213, ¶ 12 (8th Dist.). It appears that some of the conditions of the community-control sanctions imposed in this case, the two numbered 9 and 12 in the sentencing entry, understand this limitation by

---

[1] For example, in *Cleveland v. Sopjack*, 2024-Ohio-6018, ¶ 26 (8th Dist.), the housing court ordered the defendants to produce financial records as part of the community-control sanction — this despite authority to the contrary that precludes such a condition. *Cleveland v. Pentagon Realty, L.L.C.*, 2019-Ohio-3775, ¶ 9 (8th Dist.).

specifically referencing the subject property's address. The remainder of the conditions instead refer to the "attached property list."

{¶ 29} There should be no need for a list. *See id.* The only properties over which the housing court has authority to impose restrictions are those identified in the charging document, the property or properties underlying the issued violations. *Id.* Further, concerns can be raised that even within a single property identified in the charging instrument, the community-control sanction should be limited to the violation at hand and is not a green light to address uncharged violations where no due process has been afforded the landowner. This practice raises concerns about the separation of powers where the judicial branch assumes the role of the executive in uncovering new violations through the guise of community-control sanctions and then compelling remediation. Uncovering violations is for the housing inspectors at City Hall, not the judiciary. *State v. Hacker*, 2023-Ohio-2535, ¶ 14, quoting *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 56 ("The [separation-of-powers] doctrine 'requires that each branch of a government be permitted to exercise its constitutional duties without interference from the other two branches of government.'").

{¶ 30} Nevertheless, I agree with the majority that the limited question presented, whether the trial court's community-control sanction can include requirements of compliance for any and all Cleveland properties, is moot. It is undisputed that Johnson's only property in Cleveland is the subject property.